AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| **6/13/2025** |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____ MMC _____ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 6/13/2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY Rebecca Munroe DEPUTY |

United States of America

v.

Javier Ramirez,

　　　　　Defendant.

Case No.   2:25-MJ-03646-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 12, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 111 | Assaulting, Resisting, or Impeding a Federal Officer |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　*Complainant's signature*

　　　　　　　　　　　　　　Nicholas DeSimone, HSI Special Agent
　　　　　　　　　　　　　　　　　　*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:　　　　6/13/25

　　　　　　　　　　　　　　　　　　*Judge's signature*

City and state:　Los Angeles, California　　　Hon. Charles Eick U.S. Magistrate Judge
　　　　　　　　　　　　　　　　　　*Printed name and title*

AUSA: Shawn Andrews x6104

## AFFIDAVIT

I, Nicholas DeSimone, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant for Javier RAMIREZ ("RAMIREZ") for a violation of 18 U.S.C. § 111 (Assaulting, Resisting, or Impeding a Federal Officer).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF RESIDENT AGENT IN CHARGE NICHOLAS DESIMONE

3.    I am a Homeland Security Investigations ("HSI") Special Agent ("SA") and have been employed as such since February 21, 2016. I am authorized by Title 8, United States Code, Section 1357, and Title 19, United States Code, Section 1589a, to investigate immigration law and customs law violations, respectively.

4.    On March 5, 2009, I began my law enforcement career with the United States Border Patrol ("USBP") as a Border Patrol agent. From 2009 to 2016, I was primarily assigned to the USBP's

El Centro Sector in Southern California. During my tenure with the USBP, I was assigned to various interdiction and intelligence teams, and from my assignment on these teams, I became trained and experienced in surveillance, investigative research, the analysis of telephone records, and basic investigative skills related to the interdiction of contraband smugglers. Additionally, during this period, I was the Indio Border Patrol Station's prosecutions officer. In that role, my duties involved conducting reactive investigations of both immigration and customs violations and, if applicable, seeking criminal prosecutions for those violations. During the course of my employment with the USBP, I was involved in hundreds of prosecutions related to the illegal entry of criminal aliens into the United States and the smuggling of human and drug contraband by transnational criminal organizations.

5.    In 2016, I began my employment with HSI. I attended and completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the HSI Special Agent Training Program.

6.    Following the completion of my training, from 2016 to 2019, I was assigned to the HSI Los Angeles International Airport Office in El Segundo, California, where I was primarily assigned to investigating contraband smuggling – namely opioid smuggling – via the mail and commercial cargo systems.

7.    From 2019 to 2024, I was a member of Group 46 of the Southern California Drug Task Force, where I was tasked with performing criminal investigations into complex drug trafficking

conspiracies and networks. During this period, I led and participated in dozens of investigations of complex drug trafficking conspiracies.

8.    I am currently the Resident Agent in Charge of the HSI Integrated Operations Group Task Force ("Task Force"). As part of this Task Force, I investigate various federal crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations. As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

9.    On or about June 12, 2025, USBP agents were conducting roving patrol in the City of Montebello, California, within the Central District of California. At approximately 4:32 p.m., Border Patrol Agent ("BPA") J.C. engaged a subject in a consensual encounter in the parking lot of 1537 W. Olympic Boulevard, Montebello, California 90640. The parking lot at 1537 W. Olympic Boulevard is fenced and gated. At the time of this interaction, the gate to the parking lot was open.

### A.    Interaction with and Arrest of RAMIREZ

10.    As BPA J.C. engaged in the consensual encounter, BPA M.P. observed a man, later identified as RAMIREZ, attempting to conceal himself between two nearby vehicles. BPA M.P., who was

wearing a vest with identifiable USBP markings, believed that RAMIREZ' actions were suspicious[1].

11.  Spontaneously, RAMIREZ began running towards BPA M.P., who was standing near the open, gated exit of the parking lot. As RAMIREZ ran towards the exit, running into BPA M.P. The impact of the collision nearly threw BPA M.P. off balance and caused BPA M.P.'s government-issued telephone, which was affixed to his vest, to dislodge and fall to the ground.

12.  BPA M.P. stopped RAMIREZ' flight by taking physical hold of RAMIREZ and identified himself as a BPA. BPA M.P. attempted to question RAMIREZ regarding his identity and citizenship, but RAMIREZ refused to answer BPA M.P. In an attempt to control RAMIREZ and prevent further flight, BPA M.P. tried to place RAMIREZ into handcuffs. When he did, RAMIREZ began to pull away from BPA M.P. and then physically pushed BPA M.P. away. With the assistance of BPA L.D., BPA M.P. was able to restrain RAMIREZ and take him to the ground.

13.  Once RAMIREZ was on the ground, he continued resisting and concealed his hands from BPA M.P.'s view[2]. To provide himself with a stable, balanced base as he continued to try to control

---

[1] In general, members of the public do not typically conceal themselves, resist, or flee from law enforcement officers spontaneously. Based on my training and experience, these behaviors are commonly displayed by persons actively involved in crime or previously who have committed a crime.

[2] Based on my experience, I know that actively resistant parties often conceal their hands from law enforcement in an attempt to prevent law enforcement from being able to secure the person's hands in handcuffs. This presents a great risk to the officers because the resistant person may have weapons concealed on their person, out of the view of the law enforcement officers.

RAMIREZ, BPA M.P. placed his left knee on the ground, next to
RAMIREZ' face. As BPA M.P. attempted to control RAMIREZ' arm,
BPA M.P. felt a sharp pain in his left thigh. BPA M.P. looked
down and saw RAMIREZ biting BPA M.P.'s thigh.

14.  BPA M.P. pulled his leg away from RAMIREZ' mouth and
continued his attempts at restraining RAMIREZ. Shortly
thereafter, BPAs M.P. and L.D. were able to secure RAMIREZ in
handcuffs.

15.  BPAs M.P. and L.D. began walking RAMIREZ back towards
the street, during which time, RAMIREZ attempted to kick at BPA
J.C. and at BPA M.P.'s telephone that had fallen to the ground.

16.  RAMIREZ was placed under arrest and transported to the
Los Angeles Federal Building for processing.

**B.   Post-Arrest Processing of RAMIREZ**

17.  At the Los Angeles Federal Building, SA Jorge Marron
and I enrolled RAMIREZ' fingerprints and biographical
information into DHS indices.

18.  During processing, I confirmed RAMIREZ' identity and
ascertained that he was a citizen of the United States.

19.  At approximately 7:54 p.m., I notified RAMIREZ of his
right per Miranda. RAMIREZ acknowledged understanding his rights
and declined to participate in an interview without the presence
of an attorney.

//

//

## IV. <u>CONCLUSION</u>

20.  For all the reasons described above, there is probable cause to believe that RAMIREZ has committed a violation of 18 U.S.C. § 111 (Assaulting, Resisting, or Impeding a Federal Officer).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>13th</u> day of
June, 2025.

_____
HONORABLE CHARLES EICK
UNITED STATES MAGISTRATE JUDGE